# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GONZALO D. HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 16-03935-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Gonzalo D. Hernandez ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II. PROCEEDINGS BELOW

On July 18, 2012, Plaintiff filed a claim for a period of disability, DIB, and SSI alleging disability beginning June 8, 2007. (Administrative Record ("AR") 88-90.) His applications were denied initially on February 8, 2013, and upon reconsideration on July 23, 2013. (AR 93, 98, 114.) On September 26, 2013,

Plaintiff filed a written request for hearing, and a hearing was held on October 29, 2014. (AR 38, 121.) Represented by counsel and assisted by an interpreter, Plaintiff appeared and testified, along with an impartial vocational expert and an impartial medical expert. (AR 40-86.) On November 21, 2014, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since June 8, 2007. (AR 31-32.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on June 3, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 8, 2007, the alleged onset date ("AOD").[2] (AR 24.) At **step two**, the ALJ found that Plaintiff's seizure disorder is a severe impairment. (AR 25.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 26.)

///
///
///

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[2] The ALJ noted that Plaintiff worked as a manager at an apartment building between 2007 and 2011, for which he received in-kind pay in an amount that would be disqualifying at this step. (AR 24.) However, because the ALJ found that the record as a whole supported a finding of "not disabled," the ALJ did not make an outcome-determinative finding at this step, instead proceeding with respect to the entire period from the AOD through the date of decision. (AR 24-25.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with no exposure to hazards (e.g., moving machinery, motor vehicles, heights, ladders, and bodies of water). The claimant is able to communicate verbally in English, but has problems with reading and writing.

(*Id.*)

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 30.) At step five, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date of the decision. (AR 31.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from

the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. <u>DISCUSSION</u>

Plaintiff raises the following issues for review: (1) whether the ALJ erred in evaluating physicians' opinions; (2) whether the ALJ erred in assessing Plaintiff's credibility; (3) whether the ALJ erred in determining Plaintiff's RFC; (4) whether the ALJ erred in evaluating lay witness statements; and (5) whether the ALJ erred in the vocational analysis. (Joint Submission ("JS") 3.) For the reasons below, the Court agrees with Plaintiff regarding the evaluation of his physicians' opinions and remands on that ground.

### A. <u>The ALJ Did Not Properly Evaluate The Opinion Of Plaintiff's Treating And Examining Physicians</u>

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject the opinions of his treating and examining physicians. (*See* JS 3-11, 21-24.) The Commissioner argues that the ALJ properly evaluated all of the medical opinion evidence. (*See* JS 12-21.)

#### 1. **Applicable Legal Standards**

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians

4

who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir.2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

### 2. Discussion

#### a. Treating Neurologist Garnik Yegyan, M.D.

Dr. Yegyan began treating Plaintiff in February 2008. (*See* AR 313, 422.) Upon initial examination, Dr. Yegyan observed that Plaintiff had a clean and neat appearance, adequate eye contact, a cooperative attitude, intact cognition and memory, intact judgment, normal thought processes, and a stable mood. (AR 313; *see* AR 25.) Dr. Yegyan documented Plaintiff's complaints of seizures since childhood and noted his description of the seizures. (AR 313; *see* AR 27.) Dr. Yegyan continued to treat Plaintiff until 2014, recording his objective findings. (*See* AR 321-28, 465-73.) The ALJ observed that between January and October 2014, Dr. Yegyan described Plaintiff's seizure disorder as being stable and well-controlled. (AR 28; *see* 469-73.)

5

In January 2012, Dr. Yegyan completed a United States Citizenship and Immigration Services form for Medical Certification for Disability Exceptions. (AR 429-32.) Dr. Yegyan stated that Plaintiff's seizures are preceded by an aura and consist of generalized tonic-clonic seizures, tongue biting, foaming of the mouth, and postictal confusion. (AR 430.) Dr. Yegyan diagnosed Plaintiff with epileptic grand mal seizures, major depressive disorder with severe recurrent episodes, headaches, memory disturbance, unspecified anxiety, and cognitive deficits due to cerebrovascular disease. (*Id.*) He also identified poor concentration, poor memory, low energy, poor sleep, irritability, inability to focus and learn new skills, and auditory and visual hallucinations. (AR 431-32.) Dr. Yegyan indicated that Plaintiff's writing and reading abilities are impaired, and as a result of his medical problems, Plaintiff had begun losing his memory and concentration. (AR 432.) Dr. Yegyan identified chronic depression and anxiety as major medical problems and stated that stressful situations can worsen Plaintiff's social and occupational functioning. (*Id.*)

Dr. Yegyan also completed a Seizure Disorder Questionnaire in June 2013. (AR 422-24.) Although Dr. Yegyan had not observed one of Plaintiff's seizures, he documented a description provided by Plaintiff's wife. (AR 422.) Dr. Yegyan noted residual effects of poor concentration, poor memory, and irritability, and medication side effects of dizziness, irritability, and poor concentration. (AR 423-24.)

The ALJ did not acknowledge or discuss the Medical Certification for Disability Exceptions form or the Seizure Disorder Questionnaire. Plaintiff contends that the ALJ erred by not evaluating or weighing these opinions by Dr. Yegyan. (JS 6-7.) Plaintiff highlights Dr. Yegyan's comments about Plaintiff's symptoms and diagnoses, noting that symptoms and diagnoses are included in the description of what constitutes a medical opinion under 20 CFR § 404.1527(a). (JS 21-22.)

For claims filed before March 27, 2017, medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 CFR § 404.1527(a)(1). The Commissioner focuses on the latter portion of this language, contending that Dr. Yegyan's statements did not constitute medical opinions because Dr. Yegyan did not explain Plaintiff's functional impairments or abilities. (JS 13.) The Commissioner notes that Dr. Yegyan "merely listed Plaintiff's subjective symptoms" and did not explain what Plaintiff could still do despite his impairment, "as needed to constitute a medical opinion." (JS 13-14.) However, the Commissioner provides no support for this interpretation of the regulatory language. Statements regarding a claimant's restrictions and what he can do despite his impairments are listed as *types* of statements that "reflect judgments about the nature and severity of [a claimant's] impairment(s)," but they are not mandated by the express language of 20 CFR § 404.1527(a)(1). *See Parvon v. Colvin*, No. CV 15-00110 ACK-BMK, 2016 WL 1047992, at *10 (D. Haw. Mar. 11, 2016) ("Defendant provides no case law in support of the contention that medical opinions must contain a description of "what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." Nor has the Court been able to locate any supporting case law. Indeed, the Court notes that the regulations simply state that medical opinions may *include* statements regarding a claimant's limitations or restrictions." (citation omitted)).

Dr. Yegyan's statements reflected judgments about the nature and severity of Plaintiff's impairments, including Plaintiff's symptoms (AR 423 (poor concentration, poor memory, and irritability); AR 430 (dizziness, poor memory, cognitive deficits, tension headaches, and forgetfulness)), Plaintiff's diagnosis and prognosis (AR 422 (diagnosing grand mal seizures since 2008); AR 430 (listing

diagnoses of epileptic grand mal seizures, major depressive disorder, memory disturbance, anxiety, and cognitive defects due to cerebrovascular disease)), and Plaintiff's mental restrictions (AR 432 ("inability to focus and learn new skills," "any stressful situation can worsen his social and occupational functioning")). Accordingly, the Court finds that Dr. Yegyan provided a proper medical opinion. *See Boardman v. Astrue*, 286 F. App'x 397, 399 (9th Cir. 2008) (finding that a physician "clearly expressed a medical opinion" when he described a claimant's symptoms, gave a prognosis, and described restrictions); *Parvon*, 2016 WL 1047992, at *10 (finding that an examining physician's statement on the nature and severity of impairments, symptoms, diagnosis and prognosis, and mental restrictions constituted a medical opinion).

The ALJ referenced some of Dr. Yegyan's objective clinical findings (*see* AR 25, 27-28), but she did not discuss Dr. Yegyan's opinions contained within the Medical Certification for Disability Exceptions form or Seizure Disorder Questionnaire, nor did she assign them any weight or give specific reasons for rejecting them. Although Dr. Yegyan's opinion seemingly contradicted Dr. Goodman's opinion—which the ALJ found to be supported by the objective medical evidence as a whole (AR 25)—the ALJ was required to set forth specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Yegyan's opinions. "The decision of an ALJ fails this test when the ALJ completely ignores or neglects to mention a treating physician's medical opinion that is relevant to the medical evidence being discussed." *Lingenfelter*, 504 F.3d at 1045; *see Garrison*, 759 F.3d at 1012-13 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." (internal citation omitted)); *Marsh v. Colvin*, 792 F.3d 1170, 1171-72 (9th Cir. 2015) (finding that an ALJ erred by not mentioning a treating provider's opinion that communicated a diagnosis, subjective symptoms, and observations about the claimant's abilities).

The Court finds that the ALJ failed to provide any legally sufficient reasons to reject the opinions and statements provided by Dr. Yegyan. Additionally, because the ALJ's decision completely ignores these reports, the Court cannot determine whether the ALJ considered them or how they may have factored into the weight given to other medical opinions. The Court therefore is unable to determine whether the error was harmless. *See Buchanan v. Colvin*, 636 F. App'x 414, 415-16 (9th Cir. 2016) (remanding when the Court could not determine how three doctors' opinions may have factored into the ALJ's analysis because the ALJ's decision was "completely silent" about those opinions).

### b. Examining Neurologist Sarah Maze, M.D.

Dr. Maze performed a neurological evaluation of Plaintiff in January 2013. (AR 373-78.) The ALJ observed that Dr. Maze limited Plaintiff to occasionally lifting 50 pounds, standing and walking for 6 hours of an 8-hour workday, sitting for 6 hours of an 8-hour workday, no operation of motor vehicles, and no exposure to heights, moving machinery, and unprotected water. (AR 29; *see* AR 377.)

In the same part of the decision, the ALJ also considered the opinion of William A. Rack, M.D., an impartial medical expert who testified at the hearing. (AR 29; *see* AR 48-67.) Dr. Rack recommended that Plaintiff avoid exposure to hazards such as moving machinery, motor vehicles, heights, ladders, and bodies of water. (AR 29, 55, 66.) Dr. Rack did not believe that Plaintiff had any exertional limitations. (AR 29, 56.)

The ALJ found that the opinions concerning Plaintiff's environmental limitations were "deserving of significant probative weight" because they were consistent with the medical evidence of a history of seizures and "otherwise mostly normal musculoskeletal and neurological functioning." (AR 29.) The ALJ also noted that, as neurologists, Dr. Maze and Dr. Rack have "knowledge, training, and a perspective" that could reasonably give them greater insight into the limitations related to Plaintiff's impairment. (*Id.*) However, due to the lack of evidence

regarding anatomical abnormalities and functional limitations of Plaintiff's spine and extremities, the ALJ gave greater weight to Dr. Rack's opinion on Plaintiff's "ability to perform exertional activities." (*Id.*)

Despite recognizing Dr. Maze's professional insight into limitations imposed by Plaintiff's impairment, the ALJ failed to discuss all of the limitations that Dr. Maze assessed. Specifically, in the section of her opinion addressing environmental limitations, Dr. Maze determined that Plaintiff "cannot be left unattended because of his frequent seizures especially seizures consisting of standing and walking." (AR 377.) The ALJ did not mention this limitation, despite finding that the environmental limitations deserved "significant probative weight." (AR 29.)

Although the ALJ need not accept the entirety of an examining physician's opinion, she may not reject it without providing legally sufficient reasons for doing so. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31; *see also Khan v. Colvin*, No. EDCV 12-2106-MAN, 2014 WL 2865173, at *8 (C.D. Cal. June 24, 2014) ("The ALJ's failure to proffer any reason, let alone an appropriate reason, for failing to incorporate properly and/or to explain the dismissal of a portion of [a reviewing physician]'s opinion constitutes error."). Because the ALJ did not include the prohibition on Plaintiff being left unattended in the RFC assessment or in the hypotheticals posed to the vocational expert, it is not clear that the ALJ considered this limitation. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (finding that an ALJ's "silent disregard" of an uncontradicted opinion that a claimant needed constant supervision left the Court "with nothing to review to determine whether the error materially impacted the ALJ's ultimate decision").

The Court finds that the ALJ erred in failing to provide any legally sufficient reasons to reject this portion of Dr. Maze's opinion. *See Khan*, 2014 WL 2865173, at *8.

///

### c. Examining Psychiatrist Edward Ritvo, M.D.

Dr. Ritvo performed a complete psychiatric evaluation of Plaintiff in December 2012. (AR 366-70.) Dr. Ritvo assessed that Plaintiff had moderate impairment in his ability to understand, remember, or complete complex commands; interact appropriately with supervisors, coworkers, or the public; comply with job rules such as safety and attendance; respond to change in the normal workplace setting; and maintain persistence and pace in a normal workplace setting. (AR 370.) Dr. Ritvo also assigned a Global Assessment of Functioning score of 60, which the ALJ noted to be suggestive of moderate symptoms. (AR 26, 369.)

The ALJ determined that Dr. Ritvo's opinion was entitled to little probative weight because it was not supported by other evidence, Dr. Ritvo's own clinical findings, or Dr. Goodrich's opinion, which received significant probative weight. (AR 26.) Because Dr. Ritvo's opinion was not consistent with his own observations, the ALJ properly discounted it. *See Valentine v. Comm. Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (an ALJ's rejection of treating psychologist's opinion because it was contradicted by the doctor's own notes was a specific and legitimate reason supported by substantial evidence); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (an ALJ need not accept an opinion that is unsupported by clinical findings).

### 3. Conclusion

Although Dr. Ritvo's opinion was properly discounted, the ALJ did not provide legally sufficient reasons for rejecting the opinions of Dr. Yegyan and Dr. Maze. Accordingly, remand is warranted on this issue.

### B. The Court Declines To Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline

to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## C. <u>Remand For Further Administrative Proceedings</u>

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ erred in assessing the opinions of Plaintiff's treating and examining neurologists. On remand, the ALJ shall reassess the opinions of Dr. Yegyan and Dr. Maze and provide legally adequate reasons for any portion of those opinions that the ALJ discounts or rejects. The ALJ shall then reassess Plaintiff's RFC and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

///

12

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 13, 2018

/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**